IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2018

**JULIE BAUER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Maury County**
**No. 20369     Robert L. Jones, Judge**

---

**No. M2017-00120-CCA-R3-PC**

---

In 2013, the Petitioner, Julie Bauer, pleaded guilty to attempted murder with an agreed sentence of twenty-nine years of incarceration. Subsequently, the Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner contends that the post-conviction court erred when it denied her petition because she received the ineffective assistance of counsel. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Ronald G. Freemon, Columbia, Tennessee, for the appellant, Julie Bauer.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Brent A. Cooper, District Attorney General; and Daniel J. Runde, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

This case originates from the Petitioner poisoning her mother and father with a mercury compound used for making ecstasy, resulting in the death of her mother and the hospitalization of her father. Based on this incident, a Maury County grand jury indicted the Petitioner for first degree premeditated murder and conspiracy to commit first degree premeditated murder as to her mother, and attempted first degree premeditated murder and conspiracy to commit first degree premeditated murder as to her father.

## A. Guilty Plea

By agreement of the parties, the Petitioner entered a best interest plea to attempted first degree premeditated murder with an agreed-upon sentence of twenty-nine years; the remaining counts in the indictment were dismissed. At the guilty plea hearing, the trial court questioned the Petitioner about whether she wanted to give up her right to a trial, her right to appeal, her right to testify, and if her decision to plead guilty was made knowingly and voluntarily. The Petitioner informed the trial court that she understood her rights and that it was strictly her decision to plead guilty. The Petitioner agreed that she had told her attorney everything about the incident related to the charges against her. She stated that she was well-pleased with her attorney's representation and could not have asked for better representation. The Petitioner stated that she "felt comfortable" with her attorney's efforts on her case.

The Petitioner admitted to the factual basis for the plea, which, although somewhat unclear, was summarized by the trial court as circumstances where the Petitioner admitted that she and/or her son had access to a "particular mercury containing chemical that is used in the Ecstasy making process" and that, following a disagreement about money with the victims, the Petitioner had a motive to commit the crime.

## B. Post-Conviction Proceedings

The Petitioner filed a petition for post-conviction relief, *pro se*. The post-conviction court appointed an attorney, and the attorney filed an amended petition, alleging that the Petitioner had received the ineffective assistance of counsel when counsel failed to assist the Petitioner in reserving a certified question of law, pursuant to Tennessee Rule of Criminal Procedure 37, with respect to alleged violations of her right to a speedy trial and her rights pursuant to the Interstate Agreement on Detainers (hereinafter "IAD"). The Petitioner alleged that she had "several conversations" with her attorney about pursuing her IAD and right to a speedy trial claims, which she alleged he never pursued. The post-conviction court subsequently held a hearing, during which the following evidence was presented: The Petitioner testified that she was indicted in this Maury County case in December 2010 while she was housed in a federal prison in Bryan, Texas, on unrelated charges. Thereafter, she was moved to a facility in Houston, Texas where she remained until August 2011. The Petitioner stated that, because of her indictment in Tennessee, she lost privileges in the federal prison and was placed in a different custody level. She began inquiring about the IAD and eventually filled out the "paperwork" to begin the process of being brought back to Tennessee to adjudicate the present matter and get her charges in Tennessee resolved as quickly as possible. The Petitioner spoke to her counselor at the federal prison, requesting repeatedly that she receive an update about her IAD filing. She understood the IAD to require Tennessee to

retrieve her from the Texas facility and transport her to Tennessee within 180 days of her Maury County indictment. The Petitioner eventually filed a Freedom of Information Act request with the Department of Justice, asking for copies of her forms requesting an IAD transfer. She received back one form which she had filled out in May 2011 asking for an update on her IAD request and referencing a document she had filed in March 2011; this form was admitted as an exhibit. The form, in part, stated that Maury County officials had not requested a transfer. The Petitioner stated that she was eventually transported to Tennessee in August 2011, at the conclusion of her federal incarceration. She was not able to bring any documents with her when she was transported.

Following transport to Maury County in August 2011, the Public Defender's Office was appointed to represent the Petitioner, and she communicated to her appointed counsel ("PD Counsel") that she wanted a speedy trial. She discussed her IAD violation claim with PD Counsel one time. He told her it was not important, and they did not discuss it further. According to the Petitioner, PD Counsel was more concerned with a damaging letter she had written to her son. The Petitioner testified that she continually contacted PD Counsel asking why she was being held without bond and why her case was not proceeding to trial, and she did not receive an adequate response, so she wrote to the trial court detailing her complaints and providing copies of her letters to PD Counsel.

In February 2013, PD Counsel approached the Petitioner with a plea agreement, which she did not accept, and the following week he withdrew as her counsel due to an undisclosed conflict of interest. PD Counsel recommended another attorney to the Petitioner, and he came to meet with her in March 2013 ("Counsel"). The Petitioner raised with Counsel her issues related to wanting a speedy trial and her IAD violation claim. Counsel seemed to understand her desire for a speedy trial and, when he called her with a plea agreement being offered by the State, he told the Petitioner that they could "pursue the speedy trial issue after the plea." Counsel did not explain what he meant by that but, after the Petitioner entered her plea, she received a letter from Counsel saying he had not forgotten about the speedy trial issue. The Petitioner recalled that they never discussed reserving a certified question of law.

The Petitioner testified that she initially had no complaints about Counsel's representation, that he explained things in full, reviewed discovery with her, hired an investigator, and employed interns to do research for her case. The Petitioner eventually accepted the State's plea offer, and as part of the deal, the State would not oppose parole and would withdraw a pending indictment against her son. Counsel told the Petitioner that he would pursue any remedies related to the speedy trial issue after the plea was entered. He later stated that he would "handle" the speedy trial issue "on appeal."

The Petitioner testified that it was not until Counsel took over her case that she

3

realized how little had been done by PD Counsel in the years that her case remained unadjudicated. After entering her plea, Counsel sent the Petitioner a letter, recommending a malpractice attorney to her to pursue a claim against PD Counsel, and telling her that he was "working" on the speedy trial issue and had not forgotten about her claim that she was denied a speedy trial.

On cross-examination, the Petitioner agreed that she had been convicted of multiple counts of theft, forgery, and fraud-related crimes in both State and Federal courts. The Petitioner agreed that, at the guilty plea hearing in this case, she did not raise her concerns about speedy trial violation or IAD violation with the trial judge. The Petitioner agreed that she signed the plea agreement, which stated that she had been advised of her right to a speedy trial and that she waived this right. She agreed that a request had been made on her behalf for any records that had been filed with regard to her IAD request and that a search of federal records did not recover any such documents. She agreed that, when an IAD request is filed, multiple carbon copies of the form are given to an inmate and placed in the inmate's court file; none were present in the Petitioner's file and she did not have any of the copies given to her. The Petitioner could not recall if she raised the speedy trial and/or IAD violations with Counsel at their first meeting. She agreed that she did not discuss the issues with the investigator hired by Counsel.

On redirect-examination, the Petitioner stated that she did not speak to the investigator about her IAD documentation because it was not her place to give the investigator instructions.

Counsel testified that he represented the Petitioner beginning in February 2013 and that he met with her "quite a few times." He took over the case from PD Counsel. At their first meeting, Counsel informed the Petitioner that he had requested discovery. He recalled the Petitioner being frustrated at having to change attorneys and how long her case had been pending, "about two years" by the time he was appointed. He agreed that they discussed her desire to "move the case forward" and, on a couple of occasions, asked him "what could she do about a speedy trial?" Counsel clarified that her frustration and dissatisfaction was directed at PD Counsel, and she asked what kind of complaint could be filed against him. Counsel again recalled that he discussed "the speedy trial issue" with the Petitioner "at length on several occasions."

When Counsel took over the Petitioner's case, a bond hearing had been held and, as far as he could tell, no other progress had been made on the two-year-old case. Counsel did not remember the Petitioner raising a possible IAD violation with him. He learned through his research that she had been transported to Maury County at the conclusion of her federal prison sentence in Texas. He again stated that they had lengthy

4

discussions about the speedy trial issue but he clarified,

> It wasn't so much like [the Petitioner stated] I want to file a speedy trial action or something like that. It was more [the Petitioner asking] why is this taking so long, it's been a year and a half or two years, . . . and what's the delay and . . . why can't we get this thing to trial . . . it was along those lines. I mean, that led to us talking about a speedy trial.

Counsel testified that the Petitioner asked him to "research the speedy trial issue for her so she could file some kind of complaint against the Public Defender's Office." Counsel identified the letter, written by him to the Petitioner, which stated that he was "working on the speedy trial issue" for the Petitioner and had not forgotten about it. He recalled that this letter was written after the Petitioner entered her guilty plea. Prior to her entering the plea, Counsel discussed with her "the merits of the speedy trial [issue]" and "the criteria that it takes for a speedy trial." He told the Petitioner that he could not pursue the issue for her but advised that she could do so through a malpractice lawsuit against PD Counsel.

Counsel stated that he had been practicing criminal law for fourteen years and had never handled a case with a reserved certified question of law but was familiar with the procedure. He stated that he and the Petitioner never discussed reserving a certified question in her case. He agreed that employing a certified question of law to address her concerns about a speedy trial "could have been a possibility but [the case] never went that route." About the speedy trial issue, Counsel discussed the merits of filing a motion for a speedy trial in "great detail" with the Petitioner and came to the conclusion that there was no merit to proceed with such a motion.

Counsel explained that he knew the law to require a four-part test to establish a violation of the right to a speedy trial, and he told the Petitioner that he did not see how the fourth part, the prejudice "prong," could be satisfied because the Petitioner's case was set for trial. Knowing that, Counsel felt that no remedy was available to the Petitioner on a speedy trial claim. He recalled that the Petitioner's trial was continued multiple times without objection, which was potentially favorable to the Petitioner's case; Counsel felt that, instead of pursuing a motion for speedy trial, his and the Petitioner's time was better served preparing for the trial.

About the IAD request, Counsel stated that he reviewed the Petitioner's history in the federal system and learned of her incarceration and other history, but the Petitioner never mentioned to him that she had filed anything that would "trigger the detainer." He felt that a "complaint" about a lack of a speedy trial would have had to have been filed before he took over the case and that furthermore, her claim that the case was taking too

long was not sufficient grounds for relief. Counsel recalled that a witness in the trial changed his story and that his testimony was going to be damaging to the Petitioner's case, which changed Counsel's "position" in preparing for the Petitioner's trial. Counsel testified that he represented the Petitioner for approximately one year, which was shorter than a typical murder case.

Counsel read aloud from a letter he wrote to the Petitioner in 2013 stating that her case had not been delayed while he was representing her, and that, while he had constraints on his time due to his case load, her case was at the top of his list, and he would try to communicate with her more. Counsel explained to the Petitioner that the discovery files were voluminous and that he hired several interns to work on the case due to its size.

On cross-examination, Counsel stated that, in his experience, murder cases generally go to trial within a year and a half of the indictment date. He stated that, had the Petitioner mentioned the potential IAD violation to him, he would have considered it a "red flag" because it would be an "absolute defense" and resulted in the dismissal of her case. Counsel reiterated that he remembered the Petitioner talking to him about the speedy trial issue but did not recall her mentioning the detainer issue.

PD Counsel testified that he had been serving as an Assistant Public Defender for almost thirty years when he began representing the Petitioner. In his experience, homicide cases generally took eighteen or more months to be brought to trial and resolved. PD Counsel stated that, in the district where this case was docketed, the District Attorney's Office had an open file policy that allowed the Public Defender's Office to obtain discovery materials without having to file an official motion for discovery. The discovery in the Petitioner's case was "voluminous" and after receiving it he met with the Petitioner in jail to review the file. PD Counsel said that he was familiar with the IAD and that the Petitioner never mentioned to him that she had filed a request pursuant to the IAD. PD Counsel stated that any mention of the IAD would draw the attention of a criminal attorney and that he would have pursued it had the Petitioner informed him that she had filed a request that had not been responded to or acted upon.

PD Counsel recalled that he talked with the Petitioner about a speedy trial issue on numerous occasions. He recalled that there were several bond hearings in the Petitioner's case and that her bond was reduced on one occasion when the State asked for a continuance. PD Counsel did not recall any witnesses becoming unavailable while awaiting the Petitioner's trial and, in that regard, the delay did not prejudice her case. PD Counsel stated that he did not contemplate filing a motion to dismiss based on a violation of the Petitioner's right to a speedy trial because the motion would have been premature at the time of his representation. He agreed that prejudice can be shown by the length of

6

an accused's incarceration. PD Counsel agreed that he had to withdraw suddenly from the case for an apparent conflict of interest shielded by attorney-client privilege, which he stated mandated his withdrawal based on the rules of ethics.

On cross-examination, PD Counsel testified that he represented the Petitioner for approximately a year and a half or more and met with her a number of times. The Petitioner was frustrated with her case, and PD Counsel attempted to meet with her personally as much as possible. PD Counsel agreed that the Petitioner never waived her right to a speedy trial. He had no recollection of her mentioning an IAD request in relation to her federal detention in Texas. About a motion for speedy trial claim, PD Counsel stated that, to obtain relief, the motion should be filed at the latest possible date closest to the trial date in order to satisfy the length of incarceration test. PD Counsel recalled that he did ask for a continuance of the Petitioner's case because a witness indicated he was going to testify for the State which substantially affected PD Counsel's trial strategy. PD Counsel testified that the State conveyed several plea offers but, as he understood it, the Petitioner's stance was that she did not commit the crime and wanted a trial on the matter.

The post-conviction court issued an order denying the petition:

> Specifically, [the Petitioner] claims [PD Counsel] was ineffective by failing to seek dismissal of all charges because of the [S]tate's alleged failure to honor the [IAD]. Her unsupported testimony and Exhibit 2 are the only evidence and fail to establish by clear and convincing evidence that she filed the IAD request for final disposition more than 180 days before expiration of her federal sentence. Equally important was her failure to cause the request for final disposition to be sent to the prosecuting attorney and court in Tennessee. She testified that she filed the appropriate papers in Texas in January 2011, but Exhibit 2 says, in her own handwriting, that she filed in March [2011]. Her federal sentence being served in Texas expired in August before the 180 days elapsed, if it had begun to run in March. The 180 days never actually began to run, because the request for final disposition was never sent to this Court or the prosecuting attorney.

> Both [PD Counsel and Counsel] testified at the PCR hearing and said that [the Petitioner] never mentioned the detainer issue, even though both conceded that speedy trial was discussed or written about several times, but always along with a reduced bail bond amount as alternative methods of effecting her release. Never did [the Petitioner] specifically

7

mention any IAD process in Texas. Her testimony to the contrary is not credible.

. . . .

[The Petitioner's] failure to cause the [IAD] request to be sent to the Tennessee court and DA is fatal to her claim for post-conviction relief on that ground. Even if she complied with that requirement, any rights under IAD would have expired when her federal imprisonment expired. [quoting *State v. Barefoot*, No. M2014-01028-CCA-R3-CD, 2015 WL 351978 (Tenn. Crim. App., at Nashville, Jan. 28, 2015), *perm. app. denied* (Tenn. May 14, 2015)].

Therefore, the Petitioner is not entitled to any relief on the IAD issue or related speedy trial issue, because any IAD rights were never triggered, and, even if triggered, expired with her federal sentence before the 180 days had run. Again, she expressly waived any rights to complain about the absence of a speedy trial during her guilty plea.

. . . .

It is clear from the transcript of her plea hearing that [the Petitioner] is intelligent, educated, articulate, and very assertive of her opinion and rights. While she may have entertained the idea of filing a civil action against [PD Counsel], she expressly waived any issues about a speedy trial and other then known issues with [PD Counsel]. She acknowledged at least once in the foregoing transcript that she then understood any prejudice resulting to her during her representation by [PD Counsel] was no longer an issue as the result of her plea and agreed sentence. In other words, the eighteen months of her life that she thought had been wasted was now going to be credited against her agreed sentence and made any previous issues of prejudice immaterial. Therefore, she is not entitled to [any] relief on her claims of ineffective assistance of counsel. As previously stated, the Petitioner is likewise not entitled to any relief on the IAD issue.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied her petition because she received the ineffective assistance of counsel because

8

Counsel failed to "advise and assist" the Petitioner about her option to reserve a certified question of law on appeal with regards to her claim that her rights pursuant to the IAD were violated. The State responds that the Petitioner received the effective assistance of counsel because she never told her counsels about her IAD request and, even so, she has failed to prove prejudice because an IAD claim would not have caused the dismissal of her case. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. §40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must

determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). To demonstrate prejudice in the guilty plea context, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, she would not have pleaded guilty and would have insisted on going to trial. *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011).

The evidence presented in this case does not preponderate against the post-conviction court's findings that Counsel was not ineffective. The evidence presented was

that the Petitioner's counsels testified that she never mentioned the IAD request to them and that, had she done so, it would have alerted them and caused them to purse a dismissal of her charges. No record of her IAD request was ever found, and the form she was able to produce did not provide evidence that she had filed a request outside of the 180-day period. Counsel testified that, although the Petitioner's case did not move quickly and her trial was delayed by several events, namely the changing of counsel and changes in a witness's testimony, he did not pursue a speedy trial claim because he did not think the Petitioner could satisfy her burden on such a claim. He testified that, in his experience, a set trial date, coupled with the fact that several continuances of the Petitioner's trial had not been opposed by the defense, precluded the Petitioner from showing that she had been prejudiced by the delay; Counsel stated that the delays benefitted the Petitioner to some extent because it allowed him more time to better prepare for trial. Since he could not prove prejudice, no remedy would be available to the Petitioner, and so Counsel did not pursue a speedy trial claim and would not have reserved a certified question of law on appeal with regards to that issue. The Petitioner complains that Counsel failed to effectively represent her by not reserving a certified question of law on these issues, however, the Petitioner has not met her burden in showing that, had he done so, the outcome of her case would have been different. The Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly denied the Petitioner's petition for post-conviction relief. In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

11